No. 23-6115

# United States Court of Appeals
## for the Sixth Circuit

———————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ERICK WILLIAMS,

*Defendant-Appellant.*

———————

On Appeal from the United States District Court
for the Western District of Tennessee
No. 23-cr-20083-SHL (Lipman, C.J.)

———————

SUPPLEMENTAL BRIEF FOR PLAINTIFF-APPELLEE UNITED STATES

———————


For the Appellee:

KEVIN G. RITZ
United States Attorney

JERMAL BLANCHARD
Assistant United States Attorney
167 North Main Street, Suite 800
Memphis, Tennessee 38103
(901) 544-4231
jermal.blanchard@usdoj.gov

i

## TABLE OF CONTENTS

Table of Authorities ....................................................................................................

Preliminary Statement ................................................................................................

Background ..................................................................................................................

Discussion ..................................................................................................................

      Analysis ...........................................................................................................

             I.    Section 922(g)(1) is consistent with the principles that underpin our nation's historical tradition of regulating firearms. ..............................................................................

             II.   Case-by-case findings of dangerousness are not necessary. ............................................................................

Conclusion .........................................................................................................28

Certificate of Compliance ..................................................................................29

Designation of Relevant District Court Documents ..............................................30

Certificate of Service .........................................................................................31

TABLE OF AUTHORITIES

**Cases**

*Binderup v. Attorney General*,
   836 F.3d 336, 400 (3d Cir. 2016) ........................................................12
*Bucklew v. Precythe*,
   139 S. Ct. 1112, 1122 (2019) ................................................................6
*Dickerson v. New Banner Inst.*
   460 U.S. 103, 119 (1983) ......................................................................12
*Heller v. District of Columbia*,
   554 U.S. 635 ................................................................................ passim
*McDonald v. City of Chicago, Ill.*,
   561 U.S. 742 (2010)..................................................................... passim
*McIntyre v. Ohio Elections Commission*,
   514 U.S. 334, 373 (1995) ........................................................................8
*Nat'l Rifle Ass'n of Am., Inc., v. Bureau of Alcohol, Firearms & Explosives*,
   700 F.3d 185 (5th Cir.2012) ........................................................ passim
*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
   142 S. Ct. 2111 (2022)................................................................. passim
*Pontarelli* v. *United States Dep't of the Treasury*,
   285 F.3d 216, 231 (3d Cir.2002) (en banc)……………………………….14
*Range v. Attorney Gen. United States of Am.*,
   9 F.4th 96 (3d. Cir. 2023) ............................................................ passim
*Vincent v. Garland*,
   80 F.4th 1197, 1202 (10th Cir. 2024) ...............................................10
*United States v. Barton*,
   633 F.3d 168, 175 (3d Cir. 2011)……………………………………….14
*United States v. Canada*,
   103 F.4th 257, 258-59 (4th Cir. 2024) ...............................................14
*United States v. Durate*,
   101 F.4th 657 (9th Cir. 2024))..................................................... passim
*United States v. Gay*,
   98 F.4th 843, 846-47 (7th Cir. 2024)...................................................14
*United States v. Jackson*
   69 F.4th 495 (8th Cir. 2023)……………………………………….14
*United States v. Rahimi*,
   602 U.S. --, 144 S. Ct. 1889 (2024)............................................. passim

*United States v. Skoien*,
  614 F.3d 638, 640 (7th Cir. 2010) (en banc). ......................................................10

**Statutes**

18 U.S.C. §922(g)(1)........................................................................ passim
18 U.S.C. §922(g)(8)(C)(i) ............................................................. passim
18 U.S.C. 925(c)…………………………………………………………………13

**Other**

Petition for Writ of Certiorari, *Garland v. Range*, No. 23-374 ...................... passim
Government Brief .......................................................................... passim
H.R. Rep. No. 183, 104th Cong., 1st Sess. 15 (1996)  ............................................14
*The Federalist* No. 74, at 501 (Alexander Hamilton) (Jacob E. Cooke ed. 1961)..13

INTRODUCTION

The United States submits this supplemental brief in response to the Court's June 25, 2024, Order. The government answers the questions posed in that order as follows. First, 18 U.S.C. § 922(g)(1) is consistent with the principles that underpin our nation's regulatory traditions, as evidenced by sources such as historical statues categorically disarming certain classes of people. *Rahimi* supports the government's argument in that it makes clear that a variety of historical sources are relevant, that a "historical twin" is not required and that a historical precursor's use of different consequences to address a societal concern does not necessarily render it an inapt analogue. *United States v. Rahimi*, 602 U.S. --, 144 S. Ct. 1889, 1898 (2024).

Second, application of 18 U.S.C. § 922(g)(1) does not require a case-by-case finding of dangerousness. *Rahimi* observed that an individualized assessment of threat is required by statute for 18 U.S.C. §922(g)(8)(C)(i), but the Supreme Court did not say or suggest that *only* those subject to such a finding can be disarmed. Instead, it made clear that its opinion did "not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by the legislature to present a special danger of misuse." *Rahimi*, 144 S. Ct. at 1901. And it re-emphasized the statement in *Heller v. District of Columbia,* 554 U.S. 570, 627 n.26 (2008), that laws prohibiting firearm possession by felons are "presumptively lawful." *Id.* at 1902.

Especially in light of *Rahimi*, which supports the United States' position in

1

this appeal, Defendant cannot establish 18 U.S.C. §922(g)(1) is unconstitutional facially or as applied. The district court's ruling should be affirmed.

## THE *RAHIMI* DECISION

In *Rahimi*, the Supreme Court held that 18 U.S.C. § 922(g)(8)'s prohibition on firearm possession while subject to a domestic-violence restraining order is consistent with the Second Amendment. *Rahimi*, 144 S. Ct. at 1896. The Court held that "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Id.* at 1903. It explained that "[s]ince the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." *Id.* at 1896.

Those provisions included surety laws, which authorized magistrates to "require individuals suspected of future misbehavior to post a bond," and going armed laws, which "provided a mechanism for punishing those who had menaced others with firearms." *Id*. at 1900-01. The Court concluded that, "taken together, the surety and going armed laws confirm" that "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id*. at 1901. The Court acknowledged that Section 922(g)(8) was "by no means identical to these founding era regimes," but it explained that "it does not need to be": Section 922(g)(8)'s "prohibition on the possession of firearms by those found by a court to

present a threat to others fits neatly within the tradition the surety and going armed laws represent." *Id.*

The Court observed that "some courts have misunderstood the methodology of our recent Second Amendment cases," which "were not meant to suggest a law trapped in amber"; the Second Amendment "permits more than just those regulations identical to ones that could be found in 1791." *Id.* at 1897-98. It emphasized that a modern regulation "must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.'" *Id.* at 1898 (quoting *Bruen*, 597 U.S. at 30). And as Justice Barrett emphasized in concurrence, "imposing a test that demands overly specific analogues has serious problems," including "forc[ing] 21st century regulations to follow late-18th-century policy choices" and "assum[ing] that founding-era legislatures maximally exercised their power to regulate." *Id.* at 1925 (Barrett, J., concurring).

The appropriate analysis "involves considering whether the challenged regulation is consistent with the *principles* that underpin our regulatory tradition" by ascertaining "whether the new law is 'relevantly similar' to laws that our tradition is understood to permit." *Id* at 1898 (emphasis added). Under this standard, "if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." *Id*. But even "when a

challenged regulation does not precisely match its historical precursors, it still may be analogous enough to pass constitutional muster," so long as the law "comport[s] with the principles underlying the Second Amendment." *Id*.

DISCUSSION

## I.    The Second Amendment right does not extend to Defendant's conduct.

The United States reaffirms the arguments in its opening brief (ECF 11, p. 7-14), that this Court's precedent forecloses Defendant's Second Amendment challenge to Section 922(g)(1), that, as a matter of history and constitutional text, the Second Amendment right does not extend to Defendant's conduct, and that individuals with felony convictions are not among "the people" who possess a "right to keep and bear arms," as those terms are historically understood. The Court's reasoning in *Rahimi* does not disturb these arguments, which are independent bases for rejecting Defendant's Second Amendment challenge.

## II.    *Rahimi* supports the United States' position that Section 922(g)(1) is consistent with history and tradition.

*Rahimi* supports the government's position that Section 922(g)(1) is constitutional because it is "consistent with the principles that underpin our regulatory tradition." *Rahimi*, 144 S. Ct. at 1898. Two historically derived principles independently and together support Section 922(g)(1)'s constitutionality because

4

they establish that legislatures may disarm individuals who have committed serious crimes or whose firearms poses a risk of danger to themselves or others.

First, historical tradition permits Congress to disarm individuals convicted of serious crimes. *See* Gov't Br. at file-stamped p. 20-27. This source of legislative authority flows from common law and founding-era capital punishment and estate forfeiture laws, laws disarming individuals convicted of non-capital crimes, and a "highly influential" Second Amendment precursor indicating a founding-era recognition of legislatures' authority to disarm persons "for crimes committed or real danger of public injury." *Id*. at 22-26; Petition for Writ of Certiorari, 2023 WL 6623648, at *13-16, *Garland v. Range*, No. 23-374 (filed Oct. 5, 2023) ("*Range* Petition").

Second, historical tradition allows Congress to disarm categories of individuals whose convictions indicate they would pose a danger to themselves or others if armed. This principle is derived from English common law, Second Amendment precursors, 19th-century sources, and a longstanding history of American legislatures disarming such persons—all without any indication that these regulations were perceived as incompatible with the right to keep and bear arms. *See Range* Petition, 2023 WL 6623648, at *16-18 (collecting sources). *Rahimi* expressly states that the Court's opinion does "not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of

5

persons thought by a legislature to present a special danger of misuse *Rahimi*, 144 S. Ct. at 1901 (citing *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)), and the principle that legislatures can do so is evident from the historical record.

"Taken together," as *Rahimi* requires, these regulatory regimes are "relevantly similar" to Section 922(g)(1). *Id*. Section 922(g)(1)'s prohibition on firearm possession is comparable to, and is certainly not greater than, the burden imposed on those disarmed based on dangerousness or convicted of serious criminal conduct at the founding, who were often disarmed, deprived of all of their property, or condemned to death. *See, e.g., Bucklew v. Precythe*, 139 S. Ct. 1112, 1122 (2019) (noting that "death was 'the standard penalty for all serious crimes' at the time of the founding") (citation omitted); *Range* Petition, 2023 WL 6623648, at *13-14 (collecting sources). And these laws have a comparable justification: to prohibit firearm possession by individuals with convictions for serious criminal conduct or who Congress reasonably believes are likely to present a special danger of firearm misuse.

The Ninth Circuit mistakenly held to the contrary in *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024). Duarte was convicted of violating Section 922(g)(1), and he had five felony convictions for the following: vandalism, possession of a firearm by a felon, possession of a controlled substance for sale, and evading a police officer (on two occasions). *Id*. While *Duarte's* appeal was pending, the Supreme

Court decided *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 11, 71 (2022), and Duarte argued that § 922(g)(1) violated the Second Amendment as applied to him. A Ninth Circuit panel agreed with Duarte and reversed. *Id*.

The panel held that § 922(g)(1) violated the Second Amendment. At the historical-tradition step, the panel said the government needed to identify a "distinctly similar" regulation because "gun violence" is a "problem that has persisted [in this country] since the 18th century." *Id.* at 35 (quoting *Bruen*, 597 U.S. at 26-27). The panel then rejected the government's historical evidence, including state ratifying-convention proposals, laws categorically disarming dangerous groups, and 18th-century laws punishing felons with death or estate forfeiture. *Id.*

The panel concluded that a "faithful application of *Bruen*" required the government to identify "Founding-era felony analogues that are 'distinctly similar' to Duarte's underlying offenses" and that "would have been punishable either with execution, with life in prison, or permanent forfeiture of the offender's estate." *Id*. The panel concluded that *Duarte's* convictions failed this standard. His vandalism conviction "likely would have made him a misdemeanant at the Founding," his felon-in-possession offense "was a nonexistent crime" at the Founding, and there was no evidence that "drug possession and evading a peace officer" had "an analogous, Founding-era predecessor." *Id.* at 62. Thus, the panel concluded, § 922(g)(1) could not constitutionally be applied to *Duarte*.

7

The Supreme Court in *Rahimi* stated "some courts have misunderstood the methodology of our recent Second Amendment cases." *Rahimi*, 144 S. Ct. at 1897. The Ninth Circuit's reasoning and decision in *Duarte* falls within that category of misunderstandings. First, Congress may make the categorical judgment that those who have committed felony-level crimes should be disarmed, *see Range* Petition, 2023 WL 6623648, at *8-22.

Second, the panel wrongly stated that lack of a "'distinctly similar'" historical regulation is "strong if not conclusive 'evidence' that the law 'is inconsistent with the Second Amendment.'" *Duarte*, 101 F.4th at 677 (quoting *Bruen*, 597 U.S. at 26). The Supreme Court emphasized in *Rahimi* that "[a] court must ascertain whether the new law is "relevantly similar" to laws that our tradition is understood to permit." *Rahimi*, 144 S. Ct. at 1898.

 Further, the *Duarte* panel seriously misreads *Bruen*, which said the lack of such a regulation "is relevant evidence" of unconstitutionality, 597 U.S. at 27, not "strong" or "conclusive" evidence. And because founding-era legislatures cannot be presumed to have legislated to the full extent of their constitutional authority, courts should not read too much into legislative silence. The absence of an 18th-century regulation governing particular conduct in a particular way does not mean that founding-era legislatures believed such a regulation would be unconstitutional. *See McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 373 (1995) (Scalia, J.,

dissenting) ("Quite obviously, not every restriction upon expression that did not exist in 1791 or 1868 is ipso facto unconstitutional."); *Rahimi*, 144 S. Ct. at 1925 (Barrett, J., concurring).

In sum, several aspects of the *Rahimi* opinion reinforce the government's position that Section 922(g)(1) is constitutional, including *Rahimi*'s focus on historical "principles," not "historical twins," *Rahimi*, 144 S. Ct. at 1898, its instruction to consider historical evidence "together" instead of separately, *id.* at 1901, and its renewed recognition that prohibitions on firearm possession by felons are "presumptively lawful," *id.* at 1902. As detailed in the government's opening brief, Section 922(g)(1) is justified by a body of historical evidence greater than, and distinct from, that supporting Section 922(g)(8), to include felony-punishment laws, Second Amendment proposals from the ratification debates, among other evidence. The evidence shows that Congress may disarm felons categorically.

## III.   922(g)(1) does not require an individualized finding that a disarmed citizen presents a credible threat of harm to certain other people.

Section 922(g)(1) is constitutional in all its applications and is not susceptible to an as-applied challenge from Williams. *Rahimi* does not undermine the government's position on this point, nor does *Rahimi* require an individualized finding of threat under Section 922(g)(1). Rather, the Court was careful to not "suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a

special danger of misuse." *Rahimi*, 144 S. Ct. at 1901. And it again described prohibitions on firearm possession by felons as "presumptively lawful." *Id.* at 1902. Consistent with the historical tradition, Congress may categorically disarm individuals convicted of felony offenses.

In exercising that power, Congress need not require case-by-case findings of dangerousness. "That *some* categorical limits are proper is part of the original meaning of the Second Amendment." *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc). Past legislatures disarmed loyalists, minors, and vagrants, each time without requiring case-by-case findings of dangerousness. *See* Gov't's Br. in *Rahimi*, 2023 WL 5322645, at 22, 24 & n. 16, 25 & n. 18. Section 922(g)(1) is consistent with that tradition of categorical limits, as the Eighth Circuit held in *United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023), *vacated* 2024 WL 3259675 (U.S. July 2, 2024) ("there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)"). Similarly, in an opinion holding that *Bruen* had not superseded its earlier determination that § 922(g)(1) was constitutional, the Tenth Circuit stated that, under its precedent, there was "no basis to draw constitutional distinctions based on the type of felony involved." *Vincent v. Garland*, 80 F.4th 1197, 1202 (10th Cir. 2024), *vacated*, 2024 WL 3259669 (U.S. July 2, 2024).

In *Range v. Attorney General*, U.S., 69 F.4th 96 (3d Cir. 2023) (en banc), *vacated*, 2024 WL 3259661, at *1 (U.S. July 2, 2024), the Third Circuit held that *Range*, a non-violent felon, was not subject to Second Amendment restrictions imposed by Section 922(g)(1) "as the Government has not shown that our Republic has a longstanding history and tradition of depriving people like Range of their firearms." *Id.* at 106. Range was previously convicted of making a false statement to obtain food stamps. In overturning his Section 922(g)(1) conviction, the Third Circuit reasoned that "the Government's attempt to disarm Range is not 'relevantly similar' to earlier statutes" nor any other founding era regulation that the government pointed to. Similar to the court in *Duarte*, the Third Circuit has "misunderstood the methodology" of the Supreme Court's recent Second Amendment cases. *Bruen* doesn't require a case-by-case analysis.

The government need not demonstrate a historical tradition of disarming those convicted of the same crimes as a particular defendant. That demanding standard would be to require a "historical twin" or "dead ringer" in direct contravention of *Rahimi* and *Bruen*. *See Rahimi*, 144 S. Ct. at 1898. In his dissent in *Range*, Judge Krause provided a detailed survey of history showing that categorically restricting felons from possessing firearms is a longstanding tradition. "Four centuries of Anglo-American history demonstrate that legislatures repeatedly exercised their discretion to impose 'status-based restrictions' disarming entire 'categories of

11

persons,' who were presumed, based on past conduct, unwilling to obey the law."
*Range*, 69 F.4th at 128 (Krause, J., dissenting). Although "[t]he particular groups varied dramatically over time, . . . the Founding generation understood that felons were one such group." *Id.*

Section 922(g)(1) is consistent with that tradition of imposing categorical limits on the right to keep and bear arms. Common sense suggests that "felons are more likely to commit violent crimes" than those who have not committed serious crimes. *United States v. Barton*, 633 F.3d 168, 175 (3d Cir. 2011). Numerous studies show a "link between past criminal conduct and future crime, including gun violence." *Binderup v. Attorney General*, 836 F.3d 336, 400 (3d Cir. 2016) (Fuentes, J., concurring in part, dissenting in part, and dissenting from the judgments); *see id.* at 460 (collecting studies). And the Supreme Court has recognized that persons who have been "convicted of serious crimes," as a class, can "be expected to misuse" firearms. *Dickerson v. New Banner Inst.*, 460 U.S. 103, 119 (1983); *see Range* Petition, 2023 WL 6623648 at *18 (citing additional cases).

Individualized as-applied challenges to Section 922(g)(1) would be unsound in principle and unworkable in practice. To begin, such a system would distort the separation of powers. In our constitutional system, the Legislative Branch traditionally determines the consequences of criminal convictions—not only the punishment, but also the collateral consequences, such as disfranchisement,

disqualification from jury duty, ineligibility or public benefits, sex-offender registration, and disarmament. The Executive Branch, in turn, traditionally grants clemency if it determines that the punishment or the collateral consequences prescribed by law do not fit a particular offender's circumstances. If federal courts were to create a system of as-applied exemptions from Section 922(g)(1), they would in effect usurp the Executive Branch's role of deciding when to make "exceptions" to the "rigor" and "severity" of the "criminal code" enacted by Congress. *The Federalist* No. 74, at 501 (Alexander Hamilton) (Jacob E. Cooke ed. 1961).

Individualized as-applied challenges would also treat the right to possess arms differently from other rights that criminals forfeit upon conviction. States have long denied convicts the right to vote, the right to serve on juries, and the right to hold public office. It has never been suggested that a felon can challenge those disabilities on the ground that they do not fit a specific felony or circumstance. This court should not treat the right to possess arms any differently.

Congress previously tried a variant of that approach: Until 1992, felons could obtain relief from Section 922(g)(1) by demonstrating to ATF that they would "not be likely to act in a manner dangerous to public safety." 18 U.S.C. 925(c). But Congress found that program unworkable and abandoned it. See pp. 2-3, *supra*. A congressional report explained that judging whether applicants posed "a danger to public safety" was "a very difficult and subjective task" that "could have devastating

13

consequences for innocent citizens if the wrong decision is made." S. Rep. No. 353, 102d Cong., 2d Sess. 19, 20 (1992). Another report explained that "too many . . . felons whose gun ownership rights were restored went on to commit crimes with firearms." H.R. Rep. No. 183, 104th Cong., 1st Sess. 15 (1996). Unlike an administrative agency, courts "possess neither the resources to conduct the requisite investigations nor the expertise to predict accurately which felons may carry guns without threatening the public's safety." *Pontarelli* v. *United States Dep't of the Treasury*, 285 F.3d 216, 231 (3d Cir.2002) (en banc).

The government maintains that Section 922(g)(1) is constitutional in all its applications, and, at a minimum, Section 922(g)(1) is constitutional in many of its applications, including as applied to Defendant, whose criminal history includes felony convictions for aggravated robberies and unlawful transport of firearms. R. 30, Presentence Report. For example, courts have recognized that Section 922(g)(1) can be constitutionally applied to "people who have been convicted of a drive-by shooting, carjacking, [or] armed bank robbery." *United States v. Canada*, 103 F.4th 257, 258-59 (4th Cir. 2024); *see also United States v. Gay*, 98 F.4th 843, 846-47 (7th Cir. 2024) (Section 922(g)(1) may be applied to someone who had "been convicted of 22 felonies, including aggravated battery of a peace officer and possessing a weapon while in prison"). Because "the government may constitutionally forbid

people who have been found guilty of such acts from continuing to possess firearms," *Canada*, 103 F.4th at 259, Williams's challenge fails.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's rulings.

Respectfully submitted,

KEVIN G. RITZ
United States Attorney

/s/ Jermal Blanchard
Jermal Blanchard
Assistant United States Attorney
167 North Main Street, Suite 800
Memphis, Tennessee 38103
(901) 544-4231
jermal.blanchard@usdoj.gov

<u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the type-volume limitation provided in Rule 32(a)(7)(C)(i) of the Federal Rules of Appellate Procedure. The brief contains 3,901 words of Times New Roman (14-point) proportional type, from the Statement of Jurisdiction through the Conclusion. Microsoft Word is the word-processing software that I used to prepare this brief.

/s/ Jermal Blanchard
Assistant United States Attorney

<u>DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS</u>

Appellee, pursuant to Sixth Circuit Rules 28(c) & 30(b), hereby designates the following filings in the District Court's record as entries that are relevant to this appeal:

| DESCRIPTION OF ENTRY | DATE | RECORD ENTRY # | PAGE ID #'s |
|---|---|---|---|
| W.D. Tenn. 2:23-cr-20083-SHL | | | |
| Indictment | 04/27/2023 | 1 | 1 |
| Motion to Dismiss Indictment | 08/03/2023 | 21 | 35-40 |
| Minute Entry | 12/15/2023 | 38 | N/A |
| Order Denying Def's Motions to Dismiss Indictment | 05/10/2023 | 29 | 59-69 |
| PSR | 11/09/2023 | 30 | 70-99 |
| Sealed Judgment | 12/15/2023 | 38 | N/A |
| Notice of Appeal | 12/20/2023 | 40 | 166 |